NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERIC ROMERO, | : | |
| | : | **Civil Action No. 06-1783 (SRC)** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon Plaintiff's motion for partial summary judgment on liability [docket item no. 37] and Defendant's cross-motion for summary judgment [docket item no. 50]. This Court has considered the submissions by the parties in connection with these motions and the oral arguments made by counsel in the proceedings before this Court on August 14, 2008. For the reasons discussed below, this Court grants Plaintiff's motion for partial summary judgment on liability and denies Defendant's cross-motion.

### I.    FACTS

This action arises out of an injury sustained by Plaintiff Eric Romero ("Romero") while performing rail yard work as an employee of Defendant CSX Transportation, Inc. ("CSX"). CSX employed Romero as a utility conductor in its Transportation Department. On the date of the subject accident, Romero was part of a crew assigned to assemble trains and switch rail cars in

CSX's North Jersey rail yard in North Bergen, New Jersey.  His shift commenced at approximately 10:30 p.m. on February 20, 2006, and the accident occurred at approximately 1:30 a.m. on February 21, 2006.

At the time he was injured, Romero's crew was in the process of switching rail cars from Track 5 to Track 2.  It is undisputed that Romero's injury occurred while he was engaged in switching operations.  Switching operations are procedures by which rail cars and engines are separated, moved and reassembled into trains.  One of the switching operations with which Romero was tasked involved "coupling," or joining, rail cars SPHX 203608 ("car 203608") and SPHX 201216 ("car 201216").  The Court here borrows the Supreme Court's very clear description of the coupling mechanism:

> Railroad cars in a train are connected by couplers located at both ends of each car. A coupler consists of a knuckle joined to the end of a drawbar, which itself is fastened to a housing mechanism on the car. A knuckle is a clamp that interlocks with its mate, just as two cupped hands placed palms together with the fingertips pointing in opposite directions interlock when the fingers are curled.  When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars.

Norfolk and W. Ry. Co. v. Hiles, 516 U.S. 400, 401-02 (1996) (internal footnote omitted).

Romero testified that prior to attempting to couple the cars, he observed that the knuckle on car 203608 was closed but the knuckle on car 201216 was open.  When Romero initially attempted to couple the cars, the knuckles butted against each other, and the cars failed to couple automatically when car 203608 hit car 201216.  Romero found that the knuckle at the "B" end of car 201216 was closed.  He attempted to open the knuckle by operating the cutting lever.  The cutting lever, a device that opens a knuckle, will not function, however, when a component piece

of the knuckle, known as the thrower, is broken.[1]  The thrower is not visually observable unless the knuckle is disassembled and the thrower is removed.  Romero pulled on the cutting lever a few times, but it failed to open the knuckle.  He then reached in with his right hand, while holding the cutting lever with his left, to open the knuckle manually.  While engaged in this manual process, car 203608 surged on top of him.  His right hand and arm became pinned between the two cars.  Romero, who is right-hand dominant, sustained serious crush injuries to his right arm and had to have two fingers on his right hand amputated.

Following the accident, CSX conducted investigations regarding the incident.  Thomas Murphy, employed by CSX as a management level foreman, inspected the railcars involved.  His inspection revealed that the knuckle thrower on the B side of car 201216 was broken.  An accident investigation was also performed by Mark McGee, the CSX terminal manager for the North Jersey yard at the time of the subject accident.  McGee states that Romero failed to comply with CSX rules in coupling the railcars that injured him.  Specifically, he maintains that Romero violated CSX's 3-step protection rule requiring that train movement be stopped and cars be separated by at least 50 feet before an employee goes between standing equipment, including rail cars.

Both Romero and CSX have proffered expert opinions in support of their positions regarding causation.  Romero's expert, Michael J. O'Brien, concludes, in relevant part, that the injury occurred as a result of the broken knuckle thrower at the B-end of car 201216.  CSX's expert, Foster J. Peterson, states that although the knuckle thrower was broken, Romero's own

---

[1] CSX employee Thomas Murphy testified in deposition that he knew the subject knuckle thrower was broken when his attempt to open the knuckle with the cutting lever failed. (Murphy Dep. Tr. 28:24 - 29:3.)

failure to follow CSX's safety rules and take necessary precautions before "fouling"[2] the rail cars was the sole cause of the accident.

Romero's motion seeks summary judgment as to liability.  CSX's motion seeks summary judgment as to the entirety of the Complaint.

## II.   DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus.

_____

[2] According to the Peterson report, to "foul" equipment means to extend any part of one's body between equipment.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at

247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the "depositions, answers to

interrogatories, and admissions on file," designate "specific facts showing that there is a genuine

issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v.

BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)

("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for

item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla'

threshold").

B.    **Analysis**

1.    Cause of Action Under the Federal Employers Liability Act

Romero's claim for relief arises under the Federal Employers Liability Act ("FELA"), 45

U.S.C. § 51, et seq., which imposes liability on railroads for injuries to their employees.  The

relevant provision of the statute provides that railroads will be held liable to their employees for

injuries

> resulting in whole or in part from the negligence of any of the officers,
> agents, or employees of such carrier, or by reason of any defect or
> insufficiency due to its negligence in its cars, engine, machinery, track,
> roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51.  The statute departs from common law negligence principles, making recovery

easier to obtain than under a traditional negligence standard.  Sinkler v. Mo. Pac. R.R. Co., 356

U.S. 326, 329 (1958).  The Supreme Court has noted the deliberately broad and remedial purpose

of the statute, stating that the "cost of human injury, an inescapable expense of railroading, must

be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier." Id. Notably, under the FELA, a railroad will be held liable if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 506 (1957); Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir.1991). Thus, while the statute does not completely dispense with the requirement that a plaintiff establish a causal connection between the railroad's negligence and the injury, it sets a very low proximate cause standard. Rogers, 352 U.S. at 506; Atchison T. & S.F. Ry. Co. v. Saxon, 284 U.S. 458, 459 (1932). Under the FELA, an employee's contributory negligence will not bar him or her from obtaining relief and may only be considered to diminish the employee's recovery of damages in proportion to his or her fault. 45 U.S.C. § 53; Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 167 (2007). The defense of assumption of risk is completely eliminated. 45 U.S.C. § 54; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58 (1943).

The FELA constitutes the source of Romero's right to recover damages for his injuries in a civil action. The duties Romero claims were breached by CSX are defined by the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301, et seq. While the FSAA does not provide private cause of action for violations of the statute, an employee may recover for injuries caused by FSAA violations under the FELA. Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969). In other words, the FSAA "provides the basis for the claim, and the FELA provides the remedy." Beissel v. Pittsburgh and Lake Erie R.R. Co., 801 F.2d 143, 145 (3d Cir. 1986). In FELA actions based on a railroad's safety violations, as opposed to those based on some other alleged wrongdoing, the statutory scheme and jurisprudence interpreting it strike an even more employee-favorable balance in terms of adjusting responsibility for the loss. The FELA

6

generally requires that the plaintiff prove the traditional elements of negligence, including that the railroad's conduct fell below the standard of care owed to the employee.  Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987).  This requirement is eliminated where the claim involves equipment defect or malfunction in violation of the FSAA.  Affolder v. New York C. & St. L. R.R. Co., 339 U.S. 96, 97 (1950); Crane, 395 U.S. at 166.  A "FSAA violation is per se negligence in a FELA suit, such that if the injured employee shows a FSAA violation, the railroad is strictly liable for any injury resulting from the violation."  Hoemmelmeyer v. CSX Transp., Inc., No. 04-166, 2005 WL 2124259, at * 6 (S.D. Ohio Aug. 30, 2005) (citing O'Donnell v. Elgin, Joliet & E. Ry. Co., 338 U.S. 384, 390-91 (1949)).  Strict liability under the FELA also attaches to a breach of regulations promulgated by the Federal Railroad Administration ("FRA").  McGinn v. Burlington N. R.R. Co., 102 F.3d 295, 299-300 (7th Cir. 1996).  In accord with the strict liability that attaches upon proof of a FSAA violation, a plaintiff's damages may not be diminished to reflect any contributory negligence by the plaintiff. Eckert v. Aliquippa & S. R.R. Co., 828 F.2d 183, 186 (3d Cir. 1987).  The FELA expressly bars *any* consideration of contributory negligence in cases involving injuries caused by a safety violation.  45 U.S.C. § 53.  The FSAA also expressly prohibits consideration of assumption of risk.  49 U.S.C. § 20304.

Plaintiff bases his FELA claim on CSX's alleged violation of 49 U.S.C. § 20302, the FSAA provision requiring cars to couple automatically upon impact and of 49 C.F.R. § 215.123(d)(2), the FRA regulation prohibiting a railroad from placing or continuing in service a car with an inoperative knuckle thrower.  The automatic coupling provision provides:

a railroad carrier may use or allow to be used on any of its railroad lines–

> (1) a vehicle only if it is equipped with–

>> (A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles.

49 U.S.C. § 20302(a)(1)(A). The FRA regulation at issue states:

> A railroad may not place or continue in service a car, if--

>> * * *

> (d) The car has a knuckle pin or knuckle thrower that is:

>> * * *

> (2) Inoperative. . .

>>>> 2.   Applicability of the FSAA

As the language of the FSAA provision quoted suggests, the safety rule applies only to vehicles, e.g., railcars,[3] that are "in use." Brady v. Terminal R.R. Assn., 303 U.S. 10, 13 (1938); see also Rogers v. Norfolk S. Ry. Co., 126 Fed. Appx. 694, 696 (6th Cir. 2005) ("[i]t has long been established that the provisions of the FSAA only apply to trains and railcars that are actually 'in use'"). Whether a train is "in use" within the meaning of the FSAA is a question of law. Deans v. CSX Transp., Inc., 152 F.3d 326, 329 (4th Cir. 1998).

Defendant's argument against Romero's summary judgment motion and in support of its own motion for summary judgment on the FELA claims centers on the "in use" requirement. Relying on several cases that held that a "train" is not in use during switching operations, CSX

---

[3] The FSAA defines "vehicle" to include individual railcars. 49 U.S.C. § 20301.

maintains that the FSAA does not apply, and that under traditional negligence principles, Romero cannot prevail as a matter of law.  The holding and reasoning of these cases are represented by the Fourth Circuit's opinion in Phillips v. CSX Transp., Inc., 190 F.3d 285 (4th Cir. 1999). In that case, the plaintiff sustained injury when, in an effort to engage the handbrakes on a completed train sitting in the yard, the handrail he was using to pull himself up onto a railcar gave way.  Id. at 287.  The Phillips court determined that district court incorrectly entered summary judgment in favor of the plaintiff and against the railroad based on the railroad's violation of the FSAA provision requiring that railcars be equipped with secure grab irons or handholds.  Id. at 287-88. It held that the FSAA did not apply because the train involved in the plaintiff's injury was still in the railyard, in the process of switching operations, and therefore not yet "in use."  Id. at 289-90. The Fourth Circuit reached this decision based on its understanding that the Supreme Court had held in United States v. Seaboard Air Line Railroad Co. that "the FSAA does not apply to train cars involved in switching operations."  Id. at 289 (citing United States v. Seaboard Air Line R.R. Co., 361 U.S. 78, 80 (1959)); see also United States v. N. Pac. Ry., 254 U.S. 251, 254 (1920) (holding, in case involving failure of train brakes, that FSAA did not apply when locomotive involved in switching, classifying or assembling operations); Trinidad v. S. Pac. Transp. Co., 949 F.2d 187, 189 (5th Cir. 1991) (holding that FSAA's brake provisions did not apply to train that was in predeparture inspection at time of subject accident because train was not "in use").

Phillips' interpretation of the scope of the FSAA is based on a misreading of the Supreme Court's opinion in Seaboard, which concerned the FSAA requirement that all *trains* have power air brakes.  Williams v. Norfolk S. Ry. Co., 126 F.Supp.2d 986, 992 (W.D. Va.

2000).  Seaboard did not hold that "train cars" - the terminology used by Phillips - were not in use during the switching process.  Rather, the Seaboard court held that the FSAA's air brake provisions were not implicated because "switching operations" were not "train" movements.  Id. Phillips fails to distinguish between a train and a vehicle, which is a much broader term as defined by the FSAA.  They are not interchangeable terms under the statute and are subject to different safety requirements.  Robb v. Burlington N. and Santa Fe Ry. Co., 100 F.Supp.2d 867, 869 (N.D. Ill. 2000).  For example, trains are subject to air brake safety requirements; vehicles, such as rail cars, are not.  49 U.S.C. § 20302(a).  Thus, the Phillips court's statement that rail *cars* involved in switching operations fall outside the FSAA, in addition to constituting mere dictum,[4] does not accurately state the Seaboard holding.  Williams, 126 F.Supp.2d at 992.

The failure to differentiate between safety provisions applicable to assembled trains, as opposed to rail cars, also explains the Third Circuit's holding in Kensey v. Cent. R.R. Co. of N.J., 68 F.2d 562 (3d Cir. 1934).  In Kensey, the court found that the district court had correctly found the FSAA's air brake provision to be inapplicable on the basis that the plaintiff decedent was injured in an accident involving switching operations.  Id. at 563.  Relying on another air brake failure case, Kensey held that "switching operations" fall outside the FSAA's scope.  Id. (citing United States v. N. Pac. Ry., 254 U.S. 251 (1920)). The air brake provision, unlike the automatic coupling provision, applies only to "trains" and not to the more general category of "vehicles," which are subject to an automatic coupling requirement.  Compare 49 U.S.C. § 20302(a)(1) with 49 U.S.C. § 20302(a)(5).  An alleged failure of power or train brakes, which

---

[4] Phillips dealt with an incident involving a completed train rather than rail cars not yet assembled into a train.

10

was the failure at issue in <u>Kensey</u> and in <u>Northern Pacific</u>, the Supreme Court case on which the

<u>Kensey</u> holding relied, would not implicate the FSAA provision governing vehicles or rail cars.

A coupling failure and an air brake failure pose a very different question about whether the

subject unit - in the brakes situation, a train - was "in use."

   In the often-cited and seminal case of <u>United States v. Erie Railroad Co.</u>, 237 U.S. 402

(1915), the Supreme Court recognized the material distinction between a "train" and a "vehicle"

within the meaning of the FSAA, especially insofar as the terms implicate different safety rules.

It provided the following relevant analysis:

> It will be perceived that the air-brake provision deals with running a train,
> while the other requirements relate to hauling or using a car.  In one a train
> is the unit and in the other a car.  As the context shows, a train in the sense
> intended consists of an engine and cars which have been assembled and
> coupled together for a run or trip along the road.  When a train is thus
> made up and is proceeding on its journey it is within the operation of the
> air-brake provision.  But it is otherwise with the various movements in
> railroad yards whereby cars are assembled and coupled into outgoing
> trains, and whereby incoming trains which have completed their run are
> broken up.  These are not train movements, but mere switching operations,
> and so are not within the air-brake provision.  *The other provisions calling*
> *for automatic couplers and grab irons are of broader application and*
> *embrace switching operations as well as train movements, for both involve*
> *a hauling or using of cars.*

<u>Id.</u> at 407-08 (emphasis added); <u>see also</u> <u>Underhill v. CSX Transp. Inc.</u>, No. 05-196, 2006 WL

1128619, at *4 (N.D. Ind. Apr. 24, 2006) (discussing train-vehicle distinction under FSAA and

construing <u>Erie</u> to instruct that "safety requirements applicable to rail vehicles do apply during

switching operations, because switching operations necessarily involve the "use" of rail

vehicles").

   The weight of authority on this matter is consonant with <u>Erie</u>'s statement that the FSAA

safety provisions governing rail cars apply when the cars are involved in switching operations. See Hiles, 516 U.S. at 402; Affolder, 339 U.S. at 97; O'Donnell, 338 U.S. at 394;  Hinkle v. Norfolk S. Ry. Co., No. 2:05-574, 2006 WL 3783521, at *4 (S.D. Ohio Dec. 21, 2006); Underhill, 2006 WL 1128619, at *4; Hoemmelmeyer, 2005 WL 2124259, at * 5; Williams, 126 F.Supp.2d at 992-93; Robb, 100 F.Supp.2d at 869-71.  The Supreme Court's later opinion in O'Donnell interprets the statute in this way.   In that case, plaintiff's decedent, a railroad switchman, died in an accident involving a coupler that broke during switching operations. O'Donnell, 338 U.S. at 385-86.  The plaintiff sought recovery under a theory that the FSAA had been violated.  Id. at 385.  The Supreme Court, reversing the trial court judgment against the plaintiff based on an improper jury instruction, conducted an analysis that reinforces the applicability of the FSAA, and in particular its coupling requirements, to rail cars involved in switching operations.  Id. at 394 ("the plaintiff was entitled to a peremptory instruction that to equip a car with a coupler which broke in the switching operation was a violation of the [FSAA]").  Indeed, a contrary interpretation of the statute's scope would render the automatic coupling requirement virtually meaningless, because coupling, by definition, involves the joining of rail cars to form a train, which is the very purpose of switching operations.  The FSAA clearly requires that a "vehicle" must automatically couple upon impact, and to interpret that requirement as applying only when switching operations have concluded and a train has been assembled contravenes logic and common sense.

In seeking summary judgment on Romero's FELA claim, CSX argues that Romero cannot, as a matter of law, prove that the railroad was negligent.  Central to this argument is the position that the FSAA, under which Romero could establish negligence per se, does not apply

because cars 203608 and 201216 were involved in switching operations and therefore not "in use" at the time of the incident.  Having reviewed the jurisprudence on the "in use" limitation of the FSAA, the Court rejects CSX's position as unpersuasive and unfounded in the statutory and decisional law.  The rail cars Romero was attempting to couple were clearly in use and therefore subject to the safety requirements applicable to vehicles under the FSAA.

3.    Liability Under FELA Based on the FSAA Violations

Romero has established a prima facie claim for liability against CSX under FELA based on the uncontroverted FSAA violations.  Romero, by affidavit and in deposition, has asserted that the cars did not automatically couple upon impact.  CSX concedes that it cannot dispute this fact with evidence, because the coupling attempt was not witnessed by anyone other than Romero.  This failure to couple violates 49 U.S.C. § 20302(a)(1)(A).  Moreover, CSX also admits that the knuckle thrower on the B-end of car 201216 was broken.  The regulation codified at 49 C.F.R. § 215.123 prohibits using railcars with inoperative knuckle throwers.  These violations constitute negligence per se under FELA.

Whether Romero is entitled to summary judgment depends, then, on whether CSX can present facts that rebut this presumption of negligence.  Courts have held that while the failure of railroad equipment to perform as required by the FSAA fastens liability upon the rail carrier, a rail carrier may sometimes be entitled to the opportunity to establish a defense to liability.  Reed v. Philadelphia, Bethlehem & New England R.R. Co., 939 F.2d 128, 130 (3d Cir. 1991).  The facts of this case foreclose the defense CSX raises in an attempt to defeat Romero's FSAA claim.

The defense at issue concerns misalignment of the equipment.  Liability for coupling equipment failure under the FSAA "assumes that the coupler was placed in a position to operate

13

on impact."  Id. (quoting Affolder, 339 U.S. at 99).  The Supreme Court has held that "a failure

to couple will not constitute an SAA violation if the railroad can show that the coupler had not

been placed in a position to automatically couple."  Hiles, 516 U.S. at 410.  The burden of proof

to show improper alignment of the equipment, in an effort to rebut liability, rests with the

defendant.  Kavorkian v. CSX Transp., Inc., 117 F.3d 953, 958 (6th Cir. 1997) (citing Hiles, 516

U.S. at 410).

        In this case, CSX argues that Romero's admission that both of the knuckles, i.e. the

knuckle on each of the two railcars he was attempting to couple, were not open at the time of the

initial failed coupling establishes their defense to absolute liability under the FSAA and defeats

Romero's summary judgment motion.  Defendant's argument lacks factual and legal support.

The caselaw regarding improper alignment based on closed knuckles holds that demonstrating

that the couplers were not properly set requires proof that both knuckles were closed.  Reed, 939

F.2d at 131; see also Kavorkian, 117 F.3d at 957 (referring to earlier holding that for equipment

to be set properly, "at least one of the knuckles must be open"); accord Hiles, 516 U.S. at 401-02

(describing that "[w]hen cars come together, the open knuckle on one car engages a closed

knuckle on the other car, automatically coupling the cars").  In Reed, the Third Circuit,

discussing the possibility of raising defenses arising out of operation of the equipment,

summarized the governing Supreme Court cases regarding closed knuckles.  It held that "*Affolder*

stands for the proposition that if the jaws of both knuckles are closed at the time of impact, then

the railroad may offer evidence to explain the mishap and the failure to couple does not, in and of

itself, establish a per se violation of the [FSAA]."  Reed, 939 F.2d at 131.

        CSX has failed to meet its burden of demonstrating that both knuckles were closed when

the cars failed to couple automatically on Romero's initial attempt.  CSX's reliance on Romero's

deposition testimony is unavailing.  In relevant part, Romero testified as follows:

> Q:    When the first attempt to couple occurred, were both knuckles
>       open?
>
> A:    No.

(Romero Dep. Tr. 56:7-9.)  Defense counsel's question and Romero's answer leave open the

possibility that one knuckle was open and one was closed.  Defense counsel did not follow up at

any point later in the deposition to inquire whether that was the case, or whether, as CSX now

asserts without any factual support, that both knuckles were closed.  Moreover, the evidence

before the Court is to the contrary.  In his affidavit, Romero has stated that one of the two rail

cars' knuckles was in fact open before he attempted to couple the cars: "Prior to attempting the

initial coupling of 203608 and 201216, I made sure the drawbars were aligned and I observed

that the knuckle on 201216 was open.  The knuckle on 203608 was closed, but since the knuckle

on 201216 was open, the cars should have coupled upon impact."  (Romero Aff., ¶ 6.)  This

supplemental testimony from Romero does not contradict what he said in response to the

question posed by CSX's attorney at the deposition.

Thus, under Affolder and Reed, CSX has not met its burden of rebutting the presumption

of negligence under FELA that attaches here by virtue of the failure of the cars to couple

automatically as required by the FSAA.   Moreover, with regard to the other equipment defect

presented in this case, the broken knuckle thrower, CSX has provided no legal authority

discussing the opportunity to rebut a prima facie claim of liability under the FSAA.  These
equipment defects satisfy Romero's burden of establishing the railroad's negligence under the
FELA.

The FELA, of course, also contains a causation requirement, albeit one that is
significantly less stringent than what the common law would require to show proximate cause.
CSX argues that there is a genuine issue of fact as to whether the equipment defects were the
whole or partial cause Romero's injury.   It contends that the record contains sufficient evidence
to permit a jury to conclude that Romero was completely responsible for his injury and that it
occurred solely because he failed to follow the railroad's safety rules before going between the
cars and trying to open the knuckle on car 201216 manually.  This attack on Romero's claim on
the grounds of failure to establish causation as a matter of law reveals a misunderstanding of the
burdens imposed by the FELA and the FSAA and by Rule 56's summary judgment standard.
CSX erroneously argues that summary judgment is not warranted here because "Plaintiff still has
the responsibility to rebut CSX's contention that the plaintiff's negligence was the sole cause of
his accident."  (Def. Opp'n Br. at 9.)  Its argument that Romero's liability claims must go to the
jury on the question of causation are based on an incorrect statement of the law: "To recover
under the FELA or SAA, Plaintiff has to prove that his negligence was not the sole cause of this
accident.  Plaintiff has failed to come forward with such evidence."  (Id. at 10.)

The FELA's extremely lenient causation standard requires only that the plaintiff show
that "the negligence of the employer played any part, however small, in the injury or death which
is the subject of the suit."  Rogers, 352 U.S. at 508; see also 45 U.S.C. § 51.  Romero has met his
burden of coming forward with evidence that establishes that the failure of the equipment to

comply with the FSAA and the railroad regulations caused, at least in part, the subject accident. The burden under Rule 56 then shifts to CSX to come forward with proof raising doubt as to the causal connection between the equipment failure and Romero's injury.  In an effort to do this, CSX advances its theory that had it not been for Romero's failure to take the necessary precautions and follow the railroad's safety rules, the injury would not have occurred.

CSX's effort to raise a factual issue regarding causation falls short.  First, in a claim based on an FSAA violation by a railroad, the trier of fact may not consider a plaintiff employee's contributory negligence. 45 U.S.C. §§ 53 and 54; <u>Crane</u>, 395 U.S. at 166; <u>see also</u> 49 U.S.C. § 20304 (eliminating defense of assumption of risk when employee injured by equipment that violates, among others, FSAA provision requiring automatic coupling of railcars upon impact).  Second, as CSX acknowledges, rebuttal of a FELA claim would require that the defendant railroad prove that its negligence - here, the failure of the railcars and the knuckle thrower to perform as required by law - played no part whatsoever in the complained-of injury.

The proofs offered by Defendant do not support its contention that Romero's own failure to follow safety rules and his decision to place his hand between the railcars sever any and all causal links between the equipment failure and his injury.  The Court has reviewed the report of CSX's expert, whose affidavit reiterates his opinion that "the mechanical condition of the car (the purported broken knuckle thrower) in no way caused Mr. Romero to have to go between the cars without complying with CSX work rules, specifically the 3-step Protection rules and that Mr. Romero's violation of company rules was the sole cause of this accident."  (Aff. of Foster Peterson, ¶ 5.)  Even assuming that Romero in fact failed to abide by the railroad's safety rules and carelessly placed himself between the railcars, the facts of this case do not permit a

17

reasonable factfinder to determine that his injury occurred solely as the result of his own

purported negligence.  The risk of an employee going between cars when they fail to couple upon

impact is foreseeable, as the automatic coupling provision expressly contemplates that vehicles

should couple "without the necessity of individuals going between the ends of vehicles."  49

U.S.C. 20302(a)(1)(A).   Romero "fouled" the equipment in his effort to couple the railcars after

they failed to do so automatically.  For the cars to couple, he needed to open a closed knuckle on

the B-end of car 201216.  He tried to open the knuckle with the cutting lever, but this operation

was unsuccessful due to the knuckle's broken thrower, another safety violation establishing the

railroad's negligence per se.  Romero put his hand between the cars to open the knuckle

manually, an operation that Defendant's own expert concedes is necessary when the thrower is

broken. (Peterson Report at 7.)  Although the expert opines that "a broken knuckle thrower does

not mean that the coupler will not couple and uncouple automatically," (id.) the Court also has

been informed that at least one of the knuckles must be open for the cars to couple.  The causal

connection between the violations of the FSAA and the railroad regulations and the subject

accident have been established.  No reasonable factfinder could conclude, as CSX argues, that in

light of Romero's purported negligence, CSX's negligence played no role at all in the accident.

Romero, in short, has demonstrated that he is entitled to judgment as to liability on his FELA/FSAA claims as a matter of law.  CSX has raised no genuine issues of fact requiring that this case proceed to a trial by jury.  Thus, Romero's motion for partial summary judgment on liability will be granted, and Defendant's cross-motion will be denied.[5]

The matter will proceed to trial on the issue of damages.

### III.    CONCLUSION

For the foregoing reasons, the Court grants Romero's motion for partial summary judgment as to liability and denies CSX's cross-motion for summary judgment.  An appropriate form of order will be filed together with this Opinion.

___ s/ Stanley R. Chesler ___
STANLEY R. CHESLER
United States District Judge

DATED: December 9, 2008

---

[5] Because the adjudication of these motions disposes of the liability portion of the action, the Court need not reach the pending motion seeking to exclude portions of the proffered opinion of Romero's accident causation expert, Michael J. O'Brien.  The Court did not rely on or consider any disputed portion of O'Brien's opinion in deciding the summary judgment motions.