NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC ROMERO, : | |
| : | **Civil Action No. 06-1783 (SRC)** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| CSX TRANSPORTATION, INC. : | |
| : | |
| Defendant. : | |

**CHESLER**, District Judge

This matter comes before the Court upon Plaintiff's motion for a new trial on damages for pain and suffering, pursuant to Federal Rule of Civil Procedure 59 [docket entry 149]. Defendant has opposed the motion. This Court has considered the submissions by the parties. It chooses to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court will deny Plaintiff's motion.

I.   **BACKGROUND**

This action arises out of an injury sustained by Plaintiff Eric Romero ("Plaintiff" or "Romero") while performing rail yard work as an employee of Defendant CSX Transportation, Inc. ("Defendant" or "CSX") on February 21, 2006. Romero's dominant right hand and forearm were crushed between two rail cars in the subject accident. He was 28 years old at the time. The

facts relating to the accident are well-known to the parties, and moreover, set forth in the Court's December 9, 2008 Opinion adjudicating the parties' cross-motions for summary judgment.

Romero brought suit against CSX seeking relief under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, et seq., which imposes liability on railroads for injuries to their employees. The Court granted summary judgment in Plaintiff's favor on liability, and the case proceeded to trial on the issue of damages. The Court conducted a nine-day jury trial. After deliberating for nearly five hours, the jury returned a verdict awarding Plaintiff a total of $862,500.00 in damages. According to the verdict sheet, the award broke down as follows: $120,000 in past lost wages and past lost fringe benefits; $600,000 in future lost wages and future lost fringe benefits; $82,500 in past pain and suffering; and $60,000 in future pain and suffering. The Court entered its judgment molded on the jury verdict on February 23, 2010. Plaintiff timely filed the instant motion for a new trial on March 4, 2010. Fed.R.Civ.P. 59(b) (providing motion for new trial must be filed no later than 28 days after entry of judgment).

II. DISCUSSION

In this motion, Plaintiff challenges the past and future pain and suffering awards as grossly inadequate. Plaintiff argues that the verdict is against the weight of the evidence and that the pain and suffering award is so low as to shock the conscience. Failure to award a new trial, Plaintiff maintains, would result in a miscarriage of justice. Plaintiff also argues that, in light of what his brief characterizes as "uncontroverted medical proof" concerning his injuries and procedures required in the recovery therefrom, the jury's low verdict suggests juror bias against awarding damages for pain and suffering.

Under Federal Rule of Civil Procedure 59, the Court may in its discretion grant a new trial "on all or some of the issues" following a jury trial. Fed.R.Civ.P. 59(c)(1)(A); Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980) (holding authority to grant new trial committed almost entirely to discretion of trial court); see also Semper v. Santos, 845 F.2d 1233, 1236 (3d Cir. 1988) (holding that adequacy of damages left to "sound discretion" of trial court on motion for new trial). The rule does not, however, specify or limit the grounds upon which a new trial may be justified. Instead, the grounds have been developed by the courts, and the jurisprudence instructs, of relevance to the instant motion, that a new trial may be appropriate when the jury verdict is against the weight of the evidence. Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). The standard for a movant to obtain a new trial on this ground is a high one. The Third Circuit has held that "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Id. "This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992), cert denied, 507 U.S. 921 (1993) (quoting Lind v. Schenley Indus. Inc., 278 F.2d 79, 90 (3d Cir.), cert. denied, 364 U.S. 835 (1960)).

In light of this rigorous standard, this Court holds that Plaintiff's motion for a new trial must be denied. The Court's role in determining, on a Rule 59 motion, whether the verdict may stand is limited to evaluating whether the evidence of record in the action could rationally

3

support the jury's decision. <u>Motter v. Everest & Jennings, Inc.</u>, 883 F.2d 1223, 1230 (3d Cir. 1989). Juries have "considerable latitude" in ascertaining the appropriate amount of compensatory damages, and their awards are entitled to "great deference." <u>Spence v. Bd. of Educ. of Christina School Dist.</u>, 806 F.2d 1198, 1204-05 (3d Cir. 1986). In this case, the awards for past and future pain and suffering are not so low as to shock the judicial conscience and thus justify overturning the jury's verdict.

   The Court acknowledges that the uncontroverted evidence shows that Plaintiff suffered a severe crush injury, which resulted in the complete amputation of two fingers of his right hand and the mutilation of his right hand and forearm. The skin from the wrist and forearm was ripped away, and the forearm had sustained a open double bone fracture, causing the forearm to hang at a 90-degree angle. The pain was so severe that the narcotics administered intravenously to Romero could not control it, and Romero had to be intubated and anesthetized in the acute care area of the emergency room. Over a 15-month period, Plaintiff underwent five separate surgeries to repair the affected area, which involved among other things the removal of muscle from his back to be transplanted into his forearm and skin and bone grafts. In support of his motion, Plaintiff points to his own testimony regarding the extreme pain he felt immediately after the accident as well as his suffering throughout the post-accident period during which he underwent the reconstructive surgeries. He also points to corroborating testimony given by the following witnesses: Denise Stafelli, his girlfriend and live-in companion, who also gave testimony concerning the pain he felt and the limitations the injury placed on his activities; Dr. Rosenstein, his orthopedic hand specialist, who expounded on the permanent physical impediments caused by the injury; Dr. Boss, a reconstructive surgeon involved in Romero's

treatment who explained that Romero faced the option of the invasive muscle transplant surgery or amputation of his arm; and Dr. Bikoff, the emergency room plastic surgeon who testified about Romero's severe pain at that point in the treatment of his injury.

The evidence, however, was not one-sided, and indeed Defendant's opposition papers point to abundant evidence that would support as entirely reasonable the $82,500 awarded by the jury for Romero's past pain and suffering and $60,000 for future pain and suffering.  The record, in fact, contains admissions by Plaintiff that around five months after the accident, the constant, throbbing pain stopped and that after February 2007 he no longer felt pain.  He also testified that he stopped taking pain medication such as neurontin and vicodin many months before February 2007.  Romero's girlfriend confirmed in her testimony that pain in his right hand and arm had ceased by June 2007.  While his physician Dr. Rosenstein testified that an x-ray taken in March 2009 showed bone and joint erosion in the affected area and that this could cause pain the future, he also testified that Romero's right hand mobility and range of motion had improved.  Moreover, the record also demonstrates that Dr. Rosenstein has not treated Plaintiff since March 2009, and Plaintiff did not offer any evidence that the bone erosion detected by Dr. Rosenstein in fact caused him pain or that he had sought treatment from any other doctor since his last visit to Dr. Rosenstein.  In fact, a form entitled Clinical Assessment of Pain completed by Dr. Rosenstein on April 24, 2007 reported that Romero did not have pain to any "appreciable degree," adding after that note "20 minutes every other week."  (Bailey Cert., Ex. B.)  As for injury's effect on his performance of mundane tasks as well as enjoyable activities, Romero testified that he started driving again sometime in August 2006.  Dr. Rosenstein noted in a "Physical Capacities Evaluation" form completed on April 24, 2007 that Romero was able to drive without

restrictions. Romero's claim and his girlfriend's testimony that he experienced depression as a result of the accident was not substantiated by evidence from a mental health care provider, and Romero testified that he never sought treatment for this purported depression. He attended professional baseball games for pleasure. Additionally, perhaps of greatest impact and persuasion regarding Romero's ability to engage in his usual daily activities was a surveillance video showing him repairing his vehicle, changing the vehicle's oil, lifting a gallon of oil with the affected hand and arm, holding objects in his right hand, and playing with his daughter. Based on this evidence, the jury could reasonably conclude that Romero was able to perform various tasks involving lifting and grabbing with his right hand and arm, including but not limited to the activities depicted in the video. The proofs listed above were admitted into evidence and available for the jury's proper consideration, and the Court notes that Defendant's opposition papers contain even more citations to the record that would rationally support the jury's pain and suffering awards.

      The jury did not choose to award Plaintiff absolutely nothing in pain and suffering damages, nor even what could be characterized as a nominal amount. The combined total award of $142,500 for past and future pain and suffering indicates that the jury did not completely disregard Plaintiff's evidence but rather weighed it against the proofs that his pain had subsided and eventually ceased, and that Plaintiff had regained the ability to participate meaningfully in everyday activities. For the Court to set aside the jury's determination in this case simply because the Court may have awarded a greater amount had it been the trier of fact would exceed the Court's discretion on a Rule 59 motion and indeed, usurp the jury's authority. Semper, 845 F.2d at 1236-37; cf. Maylie v. Nat'l R.R. Passenger Corp., 791 F.Supp. 477, 482, 483-84

(E.D.Pa. 1992) (holding that although "calculation of damages for pain and suffering is peculiarly within the province of the jury," award of $2 million for pain and suffering in a FELA case involving back injury sustained when railroad employee fell was excessive and against the weight of the evidence). On this point, the Third Circuit has been clear that the trial court's role in reviewing the adequacy of a jury verdict on a motion for a new trial is circumscribed. It has expressly held as follows:

> While a district court has discretion in determining whether a jury's verdict is excessive, it is undisputed that the court may not vacate or reduce the award merely because it would have granted a lesser amount of damages. For the court to disturb a jury verdict, "the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court."

Motter, 883 F.2d at 1230 (quoting Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir.1979)).

Tempted as it may be to set aside the jury's pain and suffering awards as inadequate, this Court cannot conclude that the verdict goes against the weight of the evidence. This is not a case in which "the jury awarded damages in an amount substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence." Semper, 845 F.2d at 1236. Rather, it is one in which the record contains mixed evidence on pain and suffering damages, not unequivocally favoring Plaintiff or Defendant. While Plaintiff indisputably suffered substantial pain and suffering as a result of the February 21, 2006 injury, it is not inconceivable that the jury may have been particularly influenced by the surveillance video showing Plaintiff in the post-accident period ably utilizing his injured hand and carrying on activities without any obvious indication of pain. Weighing the proofs, the jury may have not fully credited Plaintiff's testimony about the excruciating nature and extent of his pain or at least viewed it as overly

embellishing his experience, that is, "gilding the lily." The Court's restraint in allowing the verdict to stand is further recommended by the jury's calculation of lost wage awards, which falls squarely within the heartland of the evidence submitted and therefore indicates to this Court that the jury carefully discharged its responsibility of reaching a verdict upon an evaluation of all the evidence. The Court, in sum, does not view this as a case that cries out for its intrusion into the considered determination of the jury as to the amount that would appropriately compensate Plaintiff for his past and future pain and suffering.

As for Plaintiff's position that the jurors must have been biased against awarding pain and suffering damages and/or that their verdict reflects an inappropriate compromise, this argument rests solely on Plaintiff's speculation and on the false presupposition that the evidence overwhelmingly supported a much higher pain and suffering award. He argues that the jury limited the pain and suffering awards because they were restricted in limiting the lost wage awards. In support of this contention, Romero points to a jury question asking "Can we find out how much workman's compensation and disability payments Eric received after the accident, and for how long and is this something we should take into account." (Jury Communication C-2, Donoghue Cert., Ex. J.) This hardly indicates bias, or a diminution of the compensation awarded for pain and suffering in light of the jury's inability to offset the lost wage calculation. Plaintiff simply furnishes no proof of jury behavior that would taint the verdict reached.

Plaintiff, in short, fails to carry his burden of demonstrating that allowing the jury verdict to stand would result in a miscarriage of justice. The Court exercises its discretion under Rule 59 and finds Plaintiff is not entitled to the extraordinary relief of a new trial.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for a new trial. An appropriate form of order will be filed together with this Opinion.

                                                                s/ Stanley R. Chesler
                                                         STANLEY R. CHESLER
                                                         United States District Judge

DATED: March 31, 2010